1

**JEFFER MANGELS BUTLER & MITCHELL LLP**
JEFFREY D. GOLDMAN (admitted *pro hac vice*)

2

TALYA GOLDFINGER (admitted *pro hac vice*)
1900 Avenue of the Stars, 7th Floor

3

Los Angeles, California  90067
Tel: (310) 203-8080

4

Fax: (866) 297-8774

5

**DICKINSON WRIGHT PLLC**

6

MICHAEL N. FEDER
Nevada Bar No. 7332

7

Email:  mfeder@dickinson-wright.com
GABRIEL A. BLUMBERG

8

Nevada Bar No. 12332
Email:  gblumberg@dickinson-wright.com

9

8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210

10

Tel:  (702) 550-4400
Fax:  (844) 670-6009

11

*Attorneys for Universal Music Group, Inc.*

12

13

14

**UNITED STATES DISTRICT COURT**

15

**DISTRICT OF NEVADA**

16

ALISA APPS,

17

                    Plaintiffs,

18

vs.

19

JOHN NEWMAN, STEVE BOOKER,
INDIVIDUALS, ISLAND RECORDS, a United

20

Kingdom corporation, and UNIVERSAL MUSIC
GROUP, INC., a Delaware corporation,

21

                    Defendants.

22

CASE NO. 2:16-cv-01132-JAD-NJK

**MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT UNIVERSAL MUSIC
GROUP, INC.**

23

24

25

26

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 4

THE LEGAL STANDARD................................................................................................ 14

ARGUMENT ..................................................................................................................... 15

I.      UMGI Had No Involvement in any Exploitation of *Love Me Again*. ....................... 15

II.     Apps Has Failed to Serve Indispensable Parties, the Owners of the Copyrights in *Love Me Again*. ................................................................................. 16

          A.     The Absent Parties Are "Necessary." ................................................. 18

          B.     The Absent Parties Are "Indispensable." ........................................... 19

III.    EVEN IF UMGI WERE A PROPER DEFENDANT, APPS CANNOT SHOW THE NECESSARY PROOF OF "ACCESS" AND "SUBSTANTIAL SIMILARITY." ....................................................................................................... 20

          A.     As a Matter of Law, Apps Has Insufficient Evidence of "Access.".. 20

          B.     As A Matter of Law, Apps Has Insufficient Evidence of "Substantial Similarity." ................................................................... 24

CONCLUSION.................................................................................................................. 30

PRINTED ON

RECYCLED PAPER
LA 14353308v1

## TABLE OF AUTHORITIES

Page

1

CASES

*Acuff–Rose Music, Inc. v. Jostens, Inc.*,
   155 F.3d 140 (2d Cir.1998) .................................................................... 25

*Alchemy II, Inc. v. Yes! Entertainment Corp.*,
   844 F. Supp. 560 (C.D. Cal. 1994) ......................................................... 22

*American Elec. Power Serv. Corp. v. EC&C Techs., Inc.*,
   No. C-2-01-1021, 2002 WL 31409846 (S.D. Ohio July 26, 2002) ................................ 17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................. 13

*Art Attacks Ink, LLC v. MGA Entertainment Inc.*,
   581 F.3d 1138 (9th Cir. 2009) ....................................................... 19, 20

*Banff Ltd. v. Limited, Inc.*,
   869 F. Supp. 1103 (S.D.N.Y. 1994) ......................................................... 14

*Batiste v. Najm*,
   28 F. Supp. 3d 595 (E.D. La. 2014) ......................................................... 24

*Brodsky v. Universal Pictures Co.*,
   149 F.2d 600 (2d Cir. 1945) ................................................................... 24

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ................................................................. 22

*Celotex v. Catrett*,
   477 U.S. 316 (1986) ..................................................................... 12, 13

*Chafir v. Carey*,
   No. 06 Civ. 3016, 2007 WL 2702211 (S.D.N.Y. Sept. 17, 2007) ...................... 20, 21

*Chapman v. Universal Motown Records Group*,
   No. 08 CIV. 3255 (LAP), 2010 WL 517480 (S.D.N.Y. Feb. 4, 2010) ........................ 24

*Cooper v. Digital Processing Sys.*,
   182 F.R.D. 242 (N.D. Ohio 1998), *aff'd*, 215 F.3d 1342 (Fed. Cir. 1999) ..................... 17

*CoStar Group, Inc. v. LoopNet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) ................................................................. 13

*Fahmy v. Jay Z*,
   No. 207CV05715CASPJWX, 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015) ................................................................................. 23

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JMBM | Jeffer Mangels Butler & Mitchell LLP

## TABLE OF AUTHORITIES
### (Cont'd.)

**Page**

*First Financial Mktg. Serv. Group, Inc. v. Field Promotions, Inc.*,
   286 F. Supp. 295 (S.D.N.Y. 1968) ................................................. 17

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ...................................................... 14

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006) ............................................... 21, 22

*Hobbs v. John*,
   722 F.3d 1089 (7th Cir. 2013) ................................................... 26

*Hoch v. MasterCard Intern. Inc.*,
   284 F. Supp. 2d 1217 (D. Minn. 2003) ......................................... 21

*Jason v. Fonda*,
   526 F. Supp. (C.D. Cal. 1981) .................................................... 21

*Jason v. Fonda*,
   698 F.2d 966 (9th Cir. 1982) ..................................................... 18

*Jean v. Bug Music Inc.*,
   No. 00 CIV 4022(DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002)............ 24

*Jewel Music Pub Co. v. Leo Feist, Inc.*,
   62 F. Supp. 596 (S.D.N.Y.1945) ................................................. 21

*Jones v. Blige*,
   558 F.3d 485 (6th Cir. 2009) ..................................................... 20

*Jordan v. Star Trak Ent., Inc.*,
   2010 WL 454374 (C.D. Cal. 2010) ................................................ 4

*Keenan v. Allan*,
   91 F.3d 1275 (9th Cir. 1996) ..................................................... 13

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ..................................................... 21

*Lil' Joe Wein Music, Inc. v. Jackson*,
   2006 WL 5428227 (S.D. Fla. Oct. 27, 2006), *aff'd*, 245 Fed. Appx. 873
   (11th Cir. 2007) ................................................................... 25

*Lil' Joe Wein Music, Inc. v. Jackson*,
   No. 06-20079-CIV, 2008 WL 2688117 (S.D. Fla. July 1, 2008) ................ 22

PRINTED ON

RECYCLED PAPER
LA 14353308v1

**TABLE OF AUTHORITIES**
(Cont'd.)

Page

*Lipton v. Nature Co.*,
   781 F. Supp. 1032 (S.D.N.Y. 1992) ..................................................... 16, 17

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ................................................................ 2

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir, 2016) ................................................. 18, 19, 20, 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................... 13

*McRae v. Smith*,
   968 F. Supp. 559 (D. Colo.1997) ........................................................... 21

*Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*,
   264 F.3d 622 (6th Cir. 2001), *abrogated on other grounds*, *Reed Elsevier,*
   *Inc. v. Muchnick*, 559 U.S. 154 (2010) ................................................. 24

*Newton v. Diamond*,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd*, 388 F.3d 1189 (9th Cir.
   2004) ............................................................................................. 23, 25, 26

*Nicholls v. Tufenkian Import/Export Ventures, Inc.*,
   367 F. Supp. 2d 514 (S.D.N.Y. 2005) .................................................... 20

*O.S.C. Corp. v. Apple Computer, Inc.*,
   792 F.2d 1464 (9th Cir.1986) ................................................................. 13

*Owens-Illinois, Inc. v. Meade*,
   186 F.3d 435 (4th Cir. 1999) ............................................................ 15, 16

*Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
   975 F. Supp. 2d 920 (N.D. Ill. 2013) ..................................................... 25

*Peters v. West*,
   692 F.3d 629 (7th Cir. 2012) ............................................................ 25, 26

*PocketMedicine.com, Inc. v. John Wiley & Sons, Inc.*,
   No. 04 Civ. 8369 (LMM), 2006 WL 785283 (S.D.N.Y. Mar. 23, 2006) ............... 17, 18

*Prunte v. Universal Music Group, Inc.*,
   699 F. Supp. 2d 15 (D.D.C. 2010) ......................................................... 24

*R-Delight Holding LLC v. Anders*,
   246 F.R.D. 496 (D. Md. 2007) .......................................................... 15, 16

PRINTED ON

RECYCLED PAPER
LA 14353308v1

Universal Music Group, Inc.'s Motion for
Summary Judgment

JMBM | Jeffer Mangels
Butler & Mitchell LLP

## TABLE OF AUTHORITIES
### (Cont'd.)

*Repp v. Webber*,
    947 F. Supp. 105 (S.D.N.Y. 1996), *aff'd*, 132 F.3d 882 (2d Cir. 1997).........................20

*Rice v. Fox Broadcasting Co.*,
    330 F.3d 1170 (9th Cir., 2003) ..................................................................... 18, 19, 20

*Selle v. Gibb*,
    741 F.2d 896 (7th Cir. 1984) ........................................................................... 22, 26

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996) ..................................................................................22

*Sony Pictures Entertainment, Inc. v. Fireworks Entertainment Group, Inc.*,
    156 F. Supp. 2d 1148 (C.D. Cal. 2001) ...................................................................22

*Stern v. Does*,
    978 F. Supp. 2d 1031 (C.D. Cal. 2011), *quoting CMM Cable Rep, Inc. v.*
    *Ocean Coast Props., Inc.*, 97 F.3d 1504 (1st Cir. 1996) .......................................24

*Stewart v. Wachowski*,
    574 F. Supp. 2d 1074 (C.D. Cal. 2005) ............................................................ 18, 20

*Tisi v. Patrick*,
    97 F. Supp. 2d 539 (S.D.N.Y. 2000) ......................................................................18

*Turner v. SAMSUNG Telecommunications Am., LLC*,
    No. CV1300629MWFVBKX, 2014 WL 11456606 (C.D. Cal. Aug. 4,
    2014) .....................................................................................................................18

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998).................................................................................................14

*Villiarimo v. Aloha Island Air Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ...............................................................................13

*VMG Salsoul, LLC v. Ciccone*,
    824 F.3d 871 (2016) ..............................................................................................23

*Walker v. Viacom Int'l, Inc.*,
    2008 WL 2050964 (N.D. Cal. May 13, 2008).........................................................18

**STATUTES**

17 U.S.C.
    § 106 ...................................................................................................................13
    § 501(a) ...............................................................................................................13

PRINTED ON

RECYCLED PAPER
LA 14353308v1

**TABLE OF AUTHORITIES**
(Cont'd.)

**Page**

§ 501(b) ............................................................................................................ 15

37 C.F.R. § 202.1(a) ........................................................................................ 24

Fed. R. Civ. P.
    11 .................................................................................................................. 14
    19(a) ...................................................................................................... 15, 16
    19(b) ............................................................................................... 15, 16, 17
    26(f) .............................................................................................................. 5
    56(c) .............................................................................................................. 4
    56(e) ............................................................................................................ 13

PRINTED ON

RECYCLED PAPER
LA 14353308v1

Pursuant to Federal Rule of Procedure 56(c), defendant Universal Music Group, Inc. ("UMGI"), the only served defendant, by and through its counsel undersigned, hereby moves for summary judgment against plaintiff Alisa Apps ("Apps") on all claims for relief in Apps' Complaint [ECF No. 1].

This Motion is made on the ground that there are no triable issues as to any material facts, and UMGI is entitled to judgment as a matter of law on the grounds that Apps cannot establish that UMGI infringed any copyright in or to the musical composition entitled *Need to Know*, that there exists an absence of indispensable parties pursuant to Fed. R. Civ. P. 19, and that, as a matter of law, Apps cannot meet her burden to show that UMGI had sufficient access to *Need to Know* or that the two songs are substantially similar.

This Motion is based upon and supported by the following Memorandum of Points and Authorities, the Declarations of Talya Goldfinger and Sheryl Gold, attached hereto as Exhibits 1 and 2, respectively, the papers and records on file in this action, and any additional evidence, argument, or other matters that the Court deems necessary or proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiff Alisa Apps ("Apps") is an aspiring musical performer who is misusing the court system as one of many publicity stunts designed to draw attention to her as-yet-unsuccessful pop music career.  Apps has been self-publishing music on YouTube and her own website for many years, garnering little response.  Her increasingly bizarre "promotional" efforts have included publicly challenging Lady Gaga to a $1 million "sing-off"[1]; accusing Eminem and Rihanna of stealing "Their Biggest Hits" from her[2]; posting a video verbally attacking Beyoncé while simultaneously boxing and singing the National

---

[1] *See* http://www.billboard.com/articles/news/953669/alisa-apps-explains-her-lady-gaga-sing-off-challenge.
[2] *See* https://www.youtube.com/watch?v=H14ojzlLKlU.

PRINTED ON
RECYCLED PAPER
LA 14353308v1

Universal Music Group, Inc.'s Motion for Summary Judgment

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   Anthem[3]; setting up camp across the street from a record company in what she called a

2   "Rock Star Challenge" and repeatedly visiting the company's offices with notes, music, and

3   flowers, resulting not in a record contract but in the occupants engaging a well-known

4   personal security firm because they feared for their safety[4]; and now, this case, the filing of

5   which Apps (naturally) accompanied with an over-the-top press release.[5]  Even after her

6   recent deposition in this case, she promptly posted a video to Twitter (featuring her counsel

7   as a special guest) opining on the case and her deposition experience.[6]

8   Somewhere in the midst of this circus is Apps' Complaint itself, in which she asserts

9   a single claim for copyright infringement against various overseas defendants, none of

10   which she has even attempted to serve with her Complaint.  Her claim arises out of these

11   unserved defendants' alleged exploitation of a song entitled *Love Me Again*, apparently

12   written by U.K.-based songwriters John Newman and Steve Booker, performed by U.K.-

13   based musical artist Newman, and released by a U.K. record company in 2013.  *Love Me*

14   *Again* was popular in the U.K., far less so in the U.S.  The sole U.S.-based defendant that

15   Apps named and served, moving defendant Universal Music Group, Inc. ("UMGI"), did not

16   create the allegedly infringing song *Love Me Again*, does not own it, and has never exploited

17   it (in the U.S. or elsewhere). UMGI would be an improper defendant even if Apps ***had***

18   served the foreign defendants.

19   Apps alleges that *Love Me Again* infringed her copyright in a musical composition

20   she wrote called *Need to Know*.  Even if UMGI ***had*** created or exploited *Love Me Again*,

21   Apps would have no case.  In *Litchfield v. Spielberg,* 736 F.2d 1352, 1358 (9th Cir. 1984),

22   the Ninth Circuit, in affirming summary judgment in a copyright infringement case,

23   observed:

24   _____

25   [3] *See* https://www.youtube.com/watch?v=EDgIBzh0bsw.

25   [4] *See* Ex. 1-D.

26   [5] *See* http://www.alisaapps.com/home/blog/press-release-alisa-apps-files-lawsuit-against-
       universal-music-group-and-british-pop-star-john-newman.

27   [6] *See* https://twitter.com/search?q=alisa%20apps&src=typd.

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

> As is too often the case, [plaintiff's] action [is] premised "partly upon a wholly erroneous understanding of the extent of copyright protection; and partly upon that obsessive conviction, so common among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism."

*Id.*, *quoting Dellar v. Samuel Goldwyn, Inc.*, 150 F.2d 612, 613 (2d Cir. 1945). That is precisely the situation here. A claim for copyright infringement requires not only that Apps own the copyright in *Need to Know* (which UMGI does not dispute for purposes of this motion), but that UMGI had access to *Need to Know* and that *Love Me Again* misappropriated significant, copyrightable elements of *Need to Know* owned by Apps. Apps admits her claim is limited to the choruses of the two songs, and that these choruses do not share the same musical notes or chord progressions. Rather, her claim is apparently based entirely on the common, unprotectable phrase "I need to know now" in both choruses, coupled with the legally unprotectable "way" she says she sang the phrase on her sound recordings of *I Need to Know*. As a matter of law, there is no "substantial similarity" between Apps' song and *Love Me Again* (Apps did not even designate an expert "musicologist" to support her claims, as is standard in music copyright infringement cases). Nor is there sufficient evidence that the creators of *Love Me Again* (a designation that does not include UMGI) had legally cognizable "access" to *Need to Know*. Apps did not even seek discovery from the unserved creators of *Love Me Again*. Discovery closed on January 25, 2017. ECF No. 19.

The Court should grant summary judgment to UMGI, and end this case, for multiple, independent reasons:

● UMGI did not create, sell, distribute, or otherwise exploit, and does not own, *Love Me Again*. It is not responsible for any alleged copyright infringement, and is an improper defendant.

Universal Music Group, Inc.'s Motion for Summary Judgment

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1      ●     Apps has failed to join necessary and indispensable parties in this suit –

2 namely, the owners of the copyrights in *Love Me Again*.  They are entitled to protect their

3 ownership interests and UMGI is neither situated, nor obligated, to do so on their behalf.

4      ●     As a matter of law, Apps cannot meet her burden to show that UMGI (or

5 even the creators of *Love Me Again*) had sufficient "access" to her song to prove actionable

6 copying.

7      ●     As a matter of law, Apps cannot meet her burden to show that *Love Me Again*

8 is "substantially similar" to her alleged musical composition *Need to Know*.

9     UMGI has explained to Apps and her counsel that this suit against UMGI is

10 improper and urged they dismiss it.  They have provided no substantive response to this

11 demand.  With no evidence that UMGI was involved in exploiting *Love Me Again* and the

12 time to serve the other named defendants having long passed, it is time for the Court to put

13 an end to this publicity stunt masquerading as a copyright infringement lawsuit.

### STATEMENT OF FACTS

15     Pursuant to FRCP 56(c) and Local Rule 7-1, UMGI sets forth the following

16 undisputed material facts:

17     **The Plaintiff**.  Apps is an aspiring pop music star whose ambition has vastly

18 outpaced her success.  Growing up, she received formal musical training in piano and voice.

19 Ex. 1-A (Apps Depo.) at 15:3-16:19.  As an adult, she has written songs and performed them

20 publicly at small clubs, parties, and a couple of private homes in the Los Angeles area.  *Id.*

21 at 16:20-17:21, 22:14-23:3.  She also performed once in Las Vegas for the opening of a club

22 at a pool at the Rio casino/hotel.  *Id*. at 19:4-16.  She has never entered into a recording

23 contract with any record company, *id*. at 18:2-4, but self-published a CD of her music in

24 2007 with nine or ten recordings of her songs with her performing the vocals, and hired

25 musicians providing the musical accompaniment.  *Id*. at 31:1-32:14, 34:1-35:16.  She

26 manufactured a couple thousand copies of this self-made CD, most of which she gave away

27 and some (perhaps 100, she says) she sold.  *Id*. at 34:1-35:16, 36:1-11, 49:4-50:15.

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**The Defendant**.  UMGI is a Delaware corporation.  Ex. 2 (Gold Decl.) at ¶ 2.  It is a holding company with no operations.  *Id*.  It does not create, develop, perform, market, sell, distribute, or exploit recorded music or musical compositions.  *Id*. at ¶ 3.  It was not involved in the creation, manufacture, reproduction, distribution, or other exploitation of the musical composition or sound recording *Love Me Again* at issue in this action.  *Id*.  It has no ownership interest in either the musical composition or sound recording of *Love Me Again*, and never has.  *Id*. at ¶ 4.  In filings with the California Secretary of State long before this action was filed, UMGI publicly states that it is a "HOLDING COMPANY."  Ex. 1-12.  UMGI's timely-served responses to Plaintiffs' interrogatories also made clear that "UMGI did not create, reproduce, distribute, adapt, display, or otherwise exploit" the song *Love Me Again* that Apps claims to be infringing.  Ex. 1-C (Response to Interrogatories) at Response 22; *see also id*. at Responses 15-19.  *See Jordan v. Star Trak Ent., Inc.*, 2010 WL 454374, *1 (C.D. Cal. 2010) (dismissing copyright infringement claim against UMGI based on findings that UMGI "is a holding company with no operations" and "does not create, develop, perform, market, sell, distribute, or exploit recorded music or musical compositions.").

UMGI is not to be confused with the "Universal Music Group," which is not a legal entity at all.  Ex. 2 (Gold Decl.) at ¶ 5.  Rather, "Universal Music Group" is the colloquial umbrella name used to identify and brand the group of companies around the world that are ultimately owned (directly or indirectly) by Vivendi S.A. (a French company), and which are engaged in various facets of the music business.  *Id*.  The "Universal Music Group" consists of record companies, music publishing companies, and manufacturing and distribution companies, among others.  *Id*.  UMGI is a subsidiary of Vivendi S.A., and an indirect parent company of several companies within the "Universal Music Group."  *Id*. ¶ 6.

**The Unserved Defendants.**  In her Complaint for copyright infringement filed on May 20, 2016, Apps also named, but did not serve, three other defendants:  John Newman, Steve Booker, and "Island Records, a United Kingdom corporation," all of which she

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 14353308v1

1    claimed were involved in creating or exploiting *Love Me Again*.  ECF No. 1.  UMGI is not

2    the parent company (direct or indirect) of "Island Records, a United Kingdom

3    corporation" ("Island"), and never has been.  Ex. 2 (Gold Decl.) at ¶ 6.  It has no contractual

4    relationship with Newman, Booker, or Island, and never has.  *Id.*

5         On August 31, 2016, this Court imposed a deadline of September 30, 2016, for

6    Apps to file proof of service on these defendants, or show good cause why such service

7    was not made by that date.  ECF No. 14.  Apps did not file proof of service or any

8    evidence of good cause.  The Joint Rule 26(f) Report signed by Apps, UMGI, and the

9    Court, gave Apps until October 27, 2016, to amend the pleadings or add additional

10   parties.  ECF No. 19.  Apps also allowed this deadline to pass without taking any action.

11        **Apps' Infringement Claim**.  One of the nine or ten songs on Apps' self-made 2007

12   CD was called *Need to Know*.  Ex. 1-A (Apps Depo.) at 26:3-7, 31:1-5, 31:18-32:4.  In this

13   lawsuit, Apps claims that her alleged copyright in *Need to Know* was infringed by a sound

14   recording and musical composition titled *Love Me Again* performed by unserved defendant

15   Newman, written by unserved defendants Newman and Booker, and presumably owned by

16   "Universal Island Records, a division of Universal Music Operations Limited" (according to

17   the ownership information printed on Newman's publicly available CD album *Tribute*,

18   which contains *Love Me Again* as one of 12 tracks, and on the *Tribute* page of iTunes'

19   digital music store).  *Id.* at 167:22-169:9; Ex. 1-G; Ex. 1-H.  UMGI is not the parent

20   company (direct or indirect) of Universal Island Records, a division of Universal Music

21   Operations Limited, and never has been.  Ex. 2 (Gold Decl.) at ¶ 6.

22        Neither the *Tribute* physical CD nor the iTunes *Tribute* page mentions UMGI.  To

23   the contrary, the CD's back cover states that *Tribute* was licensed for sale in the U.S. to

24   "Republic Records, a division of ***UMG Recordings, Inc.***"  Ex. 1-A (Apps Depo.) at 167:22-

25   168:17 (emphasis added); Ex. 1-G.  UMG Recordings, Inc. is a Delaware corporation that,

26   long before this action was filed, publicly identified itself with the California Secretary of

27   State as a company that "MANAGES RECORDED MUSIC ASSETS."  Ex. 2 (Gold Decl.)

28

1    at ¶ 7; Ex. 1-13.  Nevertheless, Apps did not sue UMG Recordings, Inc., a choice she has yet

2    to explain.  UMGI is an indirect parent of UMG Recordings, Inc.  Ex. 2 (Gold Decl.) at ¶ 7.

3           **The Alleged Similarities Between the Compositions**.  Apps concedes that her

4    infringement claim is based solely on the *choruses* of *Need to Know* and *Love Me Again* –

5    not any part of the verse or any other part of either song.  Ex. 1-A (Apps Depo.) at 119:6-

6    124:4 ("Q. The other parts of the songs have no similarities?  A. Correct.").  She also

7    concedes that *Love Me Again* does not "sample" (*i.e.*, duplicate any of the actual sounds of)

8    her *Need to Know recording* – only that *Love Me Again* infringes the underlying *musical*

9    *composition Need to Know* (specifically, part of the chorus).  *Id*. at 32:25-33:4, 33:10-23.  At

10   her deposition, Apps agreed that the following is an accurate musical transcription of the

11   chorus of *Need to Know* (with the handwritten edit she made at her deposition, changing the

12   B-minor chord in the second measure to B-flat):

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



*Id.* at 139:20-141:3, 142:9-12, 146:6-147:7; Ex. 1-32.  She also agreed that the following is an accurate musical transcription of the allegedly infringing chorus of *Love Me Again*:



*Id*. 141:4-142:12, Ex. 1-33.

The melody notes in the two choruses are plainly quite different:  G – F#-F#-F#-E – F#-D-F#-D, E-E-E-E-D-D-E, E-E-E-D-D-E in *Need to Know*, G – G – F – A – G-F-D, A – G-F-D, G – A – G-G-F-G – F in *Love Me Again*.  *See id*. at 139:5-8 ("Q. … Do you claim that any of the musical notes in your song and 'Love Me Again' are the same?  A.  No."). At her deposition, Apps also admitted that the chord progressions of the two choruses are different (E-minor / B-flat / C / D in *Need to Know*, G-minor / B-flat / Dm / C in *Love Me Again*) and that even where the same chords occur in both choruses, they are used in different places and in a different order.  *Id*. at 139:9-13 ("there's some of the same chords, but it's not the progression of chords that's the same"), 142:13-145:13 ("I'm not claiming that – you know … they copied my – this part."), 145:24-146:5 (agreeing that "songs repeat chords all the time without being infringed in [*sic*] one another").

The lyrics of the two choruses are also different, though both share the short phrase "I need to know now."  Exs. 1-32, 1-33.  Apps acknowledged at her deposition that this

common phrase is ubiquitous in popular music, including in songs by well-known recording artists such as Bruce Springsteen, Britney Spears, Stevie Nicks, and Weezer.  Ex. 1-A (Apps Depo.) at 127:11-137:9.  She asserted that she claims originality based not only on the phrase itself, but because she "made the phrase repeat and [she] sang it a certain way."  *Id*. at 124:9-22.

**Apps' Failure to Designate a Musicology Expert.**  Apps did not designate any experts in this action (and the November 28, 2016, deadline to do so, ECF No. 19, has long passed) – despite expert "musicologists" being customary and at least arguably necessary in music infringement cases.[7]  One might reasonably surmise that she could not find an expert who would support her claim.  Whatever the reason, following the passing of the expert deadline, UMGI's counsel wrote to Apps' counsel, stating:

> Mr. Mann:
>
> I am writing pursuant to Rule 11 of the Federal Rules of Civil Procedure to inquire as to the status of the plaintiff's prosecution of this action.  We are perplexed that the plaintiff did not designate an expert musicologist (as is customary and expected in copyright infringement cases such as this one) and do not see how plaintiff can satisfy her burden of proof without one.  (I assume that you were unable to locate any qualified expert who was prepared to testify that the allegedly infringing work was substantially similar to plaintiff's alleged work.)  Nor can the plaintiff serve as her own "expert," even if she were qualified to do so (which we do not concede), since the date to so designate her has also passed.  In addition, as you know from our interrogatory responses, the only served defendant, Universal Music Group, Inc., was not involved in the creation, sale, or distribution of the allegedly infringing work, and did not receive any revenue from exploitation of the allegedly infringing work.  We intend to move for summary judgment on this ground as well.  *See Jordan v. Star Trak Ent., Inc.*, 2010 WL 454374 (C.D. Cal. 2010) (attached).  And the Court's deadline to serve the other named but unserved defendants has long passed.
>
> Under these circumstances, it seems apparent to us that the plaintiff's only reasonable course of conduct is to dismiss

---

[7] See n.13 *infra*.

Universal Music Group, Inc.'s Motion for Summary Judgment

this action with prejudice.  If she does so immediately, my client is prepared to waive any claim for fees or costs.  However, if we are forced to file a motion for summary judgment and/or try the action, and prevail, we intend to seek our attorneys' fees and full costs for all of those activities pursuant to the Copyright Act as well as the Court's authority to sanction a party and/or its counsel for knowingly and recklessly pursuing a frivolous action.  *See Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216 (9th Cir. 2010) (attached).

Ex. 1-E.  Apps' counsel responded, "I will consider your remarks and respond in due course," Ex. 1-F, but he never did so.

**Apps' Evidence of UMGI's Access to *Need to Know*.**  Apps' evidence of "access" to her song is feeble.  She has *no* evidence at all that moving party *UMGI*, the holding company that is the only served defendant, had access to *Need to Know*.  She says she performed the song publicly at a few clubs in Los Angeles perhaps six to ten times, but can't identify anyone representing or employed by any Universal Music Group company (let alone UMGI) that attended any of these performances.  Ex. 1-A (Apps Depo.) at 37:6-11, 39:20-42:3, 51:10-53:3, 53:13-54:4, 55:22-56:23.  She thinks she also performed it at a party at a private Los Angeles residence.  *Id*. at 51:10-53:3, 56:25-57:14.  She posted a video of *Need to Know* on YouTube for a few years starting in 2008, garnering about 3,000 views, until she took it down because she is "no longer marketing that song."  *Id*. at 42:4-43:7, 43:18-44:22, 47:13-48:12.  *Need to Know* was also available on her website alisaapps.com for a time, and very recently (presumably long after 2013, the year *Love Me Again* was released) she saw it was available on a website called last.fm, but doesn't know how long it has been there.  *Id*. at 45:7-46:14, 46:24-27:6.[8]

Apps also alleges that she gave a copy of *Need to Know* to two music industry figures – Shawn Carter, better known as Jay-Z, and Tony Swain, a British songwriter – who

_____

[8] Apps claims she has been mentioned in a few articles in print or on the internet, but does not recall any of those articles mentioning *Need to Know*.  *Id*. at 51:10-53:3, 57:15-20, 58:2-24, 60:13-61:5.

Jeffer Mangels
Butler & Mitchell LLP

JMBM

Universal Music Group, Inc.'s Motion for Summary Judgment

have no demonstrated connection to the people or entities that created or released *Love Me Again*. In her Complaint, she alleges that in 2009, she "met with Mr. Shawn Corey Carter ('Mr. Carter'), more commonly known as the famous hiphop artist, producer, and entrepreneur 'Jay-Z' in what was then known as 'The Sports Club/LA' in Los Angeles, California. After a long discussion, Ms. Apps provided Mr. Carter with an audio recording of her song 'Need to Know.'" Complaint ¶ 19. Apps further alleges that in 2010, she "met with Mr. Carter at [a] pre Grammy celebration in Los Angeles" where she "provided Mr. Carter with another copy of her audio recording of her song 'Need to Know.'" *Id*. ¶ 20. At her deposition, Apps testified that the first "meeting" occurred when she and Carter happened to be working out at the same fitness club, she introduced herself to him, and while they talked in the lobby, her husband gave him a copy of her self-made CD containing *Need to Know*, which they just happened to have in their car. Ex. 1-A (Apps Depo.) at 94:22, 96:25-97:11, 97:20-99:1; Ex. 1-B (T. Apps Depo.) at 48:10-50:4. Apps says Jay-Z gave her his assistant's phone number. Ex. 1-A (Apps Depo.) at 99:24-100:8. But when she and her husband tried to follow up with Jay-Z (even telling one of his assistants they would **pay** Jay-Z to listen to and provide feedback on her CD), they got only perfunctory acknowledgments from the assistant and no response from Jay-Z. Ex. 1-A (Apps Depo.) at 99:21-104:4, 104:24-105:1; Ex. 1-B (T. Apps Depo) at 47:1-13; Ex. 1-52. At a later date, when she approached Jay-Z at a pre-Grammy party, she says he was "acting a little bit strange" and the encounter was brief. Ex. 1-A (Apps Depo.) at 107:12-108:15. (Apps now speculates that "maybe he was hiding something." *Id*.) Regardless, contrary to the false claim in her Complaint, the flash drive of her new music she handed him at this party did not even include *Need to Know*. *Id*. at 51:10-53:3, 107:12-109:6. She never again met with or communicated with Jay-Z or any of his representatives. *Id*. at 109:19-23. She purports to connect her brief celebrity encounters with Jay-Z to UMGI by alleging that "[u]pon information and belief, Mr. Carter owns, manages and operates the entertainment company 'Roc Nation,' which entered into a partnership with Universal [*sic*] on April 8, 2013"

Universal Music Group, Inc.'s Motion for Summary Judgment

(Complaint ¶ 21) and "[u]pon information and belief, one or more Defendants had access to a recording of Ms. Apps' 'Need to Know' by virtue of their professional and personal relationships with Mr. Carter" (*id*. ¶ 22).  Nothing in discovery has supported Apps' alleged "information and belief" and, indeed, publicly available documents suggest that the authors of *Love Me Again*, Newman and Booker, composed and recorded their song long before April 8, 2013.  Ex. 1-I.  UMGI has no contractual relationship with "Roc Nation" and never has.  Ex. 2 (Gold Decl.) at ¶ 6.

Also in 2010, Apps (as part of a "very expensive" social media campaign bankrolled by her husband, Ex. 1-B ( T. Apps Depo.) at 63:17-64:20, and a $100,000 donation from a relative, Ex. 1-A (Apps. Depo.) at 24:6-14, set up shop across the street from a Universal Music Group office in Santa Monica, California, for what they called a "Pop Star Challenge."  Ex. 1-B (T. Apps Depo.) at 59:20-60:22.  Around this time, Apps repeatedly visited the Universal Music Group receptionist in Santa Monica, delivering messages, flowers, and music.  Ex. 1-A (Apps Depo.) at 111:23-113:18.  Unfortunately for Apps, those at the office responded not by recognizing Apps as a budding young musical talent, but by engaging a prominent personal security firm, which identified Apps as a potentially dangerous "pursuer" and advised the occupants to avoid contact with her.  Ex. 1-D.

Long ***after*** she filed her Complaint and even after she initially responded to UMGI's written discovery, Apps suddenly remembered that, back in 2007, she had ***also*** given a copy of *Need to Know* to a man named Tony Swain, a songwriter, following a trip to Great Britain.  Ex. 1-A (Apps Depo.) at 51:10-53:3, 61:16-62:5, 63:23-64:7.  For some period of time, Apps believes, Swain worked for a Universal Music Group entity in the United Kingdom.  *Id*. at 63:23-64:3, 64:12-19, 89:11-13.  In March 2007, Apps and her husband somehow finagled a meeting with Swain in London (at their depositions, they couldn't explain exactly how).  *Id*. at 63:3-64:7; Ex. 1-B (T. Apps Depo.) at 11:21-12:21.  They met with Swain for two hours or so, Ex. 1-A (Apps Depo.) at 68:19-21, and they say he was supportive of their ambitions.  *Id*. at 74:2-75:2.  Sometime ***after*** that meeting, Apps or her

1  husband emailed Swain an audio recording of *Need to Know*, and Swain responded that he

2  liked it.  *Id.* at 82:7-13, 84:15-85:6.  Alas, when Apps and her husband returned to the U.K.

3  in July 2007 and sought to meet with Swain again, he was unavailable.  *Id.* at 79:10-80:6,

4  85:9-86:6.  After they returned to the U.S., Swain blamed his unavailability on a

5  "miscommunication" (*id.* at 85:13-20; Ex. 1-B (T. Apps Depo.) at 42:1-4), but over the next

6  few years, Apps and her husband repeatedly emailed Swain and never got a response.  Ex. 1-

7  A (Apps Depo.) at 86:7-89:10, 93:21-94:9.  They won't admit that Swain "blew them off,"

8  but concede that the circumstances were quite "disappointing."  *Id.* at 86:2-6; Ex. 1-B (T.

9  Apps Depo.) at 41:1-25, 42:5-23.[9]  Apps has no evidence that Swain had any involvement in

10  Newman and Booker's creation of *Love Me Again*.  Ex. 1-A (Apps Depo.) at 63:3-65:7.

11  **THE LEGAL STANDARD**

12  The purpose of summary judgment is to isolate and dispose of legally untenable or

13  factually unsupportable claims.  *Celotex v. Catrett*, 477 U.S. 316, 324 (1986).  To obtain

14  summary judgment, a moving party need only show "an absence of evidence to support the

15  non-moving party's case."  *Id.* at 325.  Once the moving party meets this initial burden, the

16  opposing party must set forth specific facts showing that there is a genuine issue for trial;

17  otherwise, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(e);

18  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584 (1986).  To avoid

19  entry of summary judgment, the opposing party must produce specific material evidence

20  capable of "affect[ing] the outcome of the suit under the governing law."  *Anderson v.*

21  *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "Factual disputes that are irrelevant or

22  unnecessary will not be counted."  *Id.*  In addition, the non-moving party must "identify with

23  reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*,

24  91 F.3d 1275, 1279 (9th Cir. 1996).  "The mere existence of a scintilla of evidence in

25

26  [9] Apps says that at their one meeting, Swain told Apps he would like to introduce her to a
man named David Massey, who was starting a record label, but he never did, and to this day,

27  Apps has never met with David Massey.  Ex. 1-A (Apps Depo.) at 74:2-75:2.

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

support of the plaintiff's position" is insufficient.  *Id*. at 252.  A non-moving party must produce "evidence on which the jury could reasonably find for" the non-moving party.  *Id*.  Evidence that is "merely colorable" or "is not significantly probative" is insufficient.  *Anderson*, 477 U.S. at 249-50.  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy."  *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1467 (9th Cir.1986). And "uncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment.  *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

## ARGUMENT

## I.    UMGI Had No Involvement in Any Exploitation of *Love Me Again*.

Copyright infringement requires a plaintiff to prove that the defendant violated one of the exclusive rights of the copyright owner set forth in Section 106 of the Copyright Act, such as reproduction, adaptation (*i.e.*, creation of derivative works), distribution, public display, or public performance.  17 U.S.C. §§ 106, 501(a).  "While the Copyright Act does not require that the infringer know that he is infringing or that his conduct amount to a willful violation of the copyright owner's rights, it nonetheless requires ***conduct*** by a person who causes in some meaningful way an infringement."  *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549, 552 (4th Cir. 2004) ("direct infringement must involve conduct having a volitional or causal aspect.") (emphasis added).

Apps alleges that UMGI infringed her alleged copyright in the musical composition *Need to Know* by creating, distributing, and/or exploiting a musical work called *Love Me Again*.  Complaint ¶¶ 32-33.  She is mistaken.  As set forth at pages 4-6 *supra* and in the Gold Declaration (Ex. 2), UMGI had no involvement in any allegedly infringing activity.  UMGI is a holding company with no operations.  It had nothing to do with the creation, manufacture, reproduction, distribution, or other exploitation of *Love Me Again*.  UMGI did not create *Love Me Again*; does not own it or any copyrights in it; has never reproduced it or directed its reproduction, in the U.S. or elsewhere; and has never distributed it or directed its

PRINTED ON
RECYCLED PAPER
LA 14353308v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

distribution, in the U.S. or elsewhere.  UMGI engaged in no volitional (or other) conduct that contributed to any alleged infringement by *Love Me Again*.

UMGI is but an indirect parent company of various companies within the "Universal Music Group," which is a colloquial trade name that collectively describes separate entities operating in various countries around the world and engaged in various facets of the music business, which are ultimately owned by Vivendi, S.A., a French company.  And UMGI is **not** the parent, direct or indirect, of the unserved foreign corporate defendant, named as "Island Records, a United Kingdom corporation," nor has it ever been.[10]  This is hardly a secret – publicly available websites, cases, and UMGI's interrogatory responses and Rule 11 to Apps counsel email have all spelled it out with crystal clarity.

For these reasons alone, and without even reaching the merits of Apps' copyright claim, UMGI is entitled to summary judgment.

## II.    Apps Has Failed to Serve Indispensable Parties, the Owners of the Copyrights in *Love Me Again*.

After commencing this action in May 2016, Apps had ample time to serve all of the named defendants and notify all individuals and entities with interests in this matter.  She failed to do so.  She has not even **tried** to serve any named defendant other than UMGI, nor any owner of any copyright in *Love Me Again*.

---

[10] Even if there were a parent/subsidiary relationship between UMGI and this company (which there is not), "[a] parent corporation cannot be held liable for the infringing actions of its subsidiary unless there is a substantial and continuing connection between the two **with respect to the infringing acts**."  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519-20 (9th Cir. 1985) (emphasis added).  To the contrary, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation … is not liable for the acts of its subsidiaries."  *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted).  To impose liability on a parent company for copyright infringement, "there must be indicia beyond the mere legal relationship showing that the parent is actually involved with the decisions, processes, or personnel directly responsible for the infringing activity."  *Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1109 (S.D.N.Y. 1994).  "[T]he plaintiff must present evidence that the parent has done more in relation to the infringing activity than simply be the parent."  *Id.* at 1110.  No such evidence exists here.

JMBM
Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 14353308v1

Universal Music Group, Inc.'s Motion for
Summary Judgment

Instead, Apps seeks to put UMGI to the unfair task and burden of defending an infringement claim involving a work UMGI does not own or claim to own and has never exploited.  Meanwhile, the actual copyright owners are absent from the litigation and unable to protect their ownership interest in *Love Me Again* against Apps' claim.

In copyright actions, "[t]he court may require the joinder … of any person having or claiming an interest in the copyright."  17 U.S.C. § 501(b).  A court may dismiss an action for failure to join an indispensable party, as defined under Fed. R. Civ. P. 19.  Fed. R. Civ. P. 12(b)(7); *R-Delight Holding LLC v. Anders,* 246 F.R.D. 496, 498 (D. Md. 2007).  Rule 19(a)(1)(B) dictates that a party is "necessary" and should be joined in the action if it is subject to service of process and if

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B).  Where a party is "necessary" but ***cannot*** be joined, the court is then to consider whether that party is "indispensable," examining certain factors to determine whether, "in equity and good conscience, the action should proceed among the parties, or should be dismissed."  Fed. R. Civ. P. 19(b); *see also Owens-Illinois, Inc. v. Meade,* 186 F.3d 435, 440 (4th Cir. 1999); *R-Delight,* 246 F.R.D. at 499.  The relevant factors under Rule 19(b) are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  The analysis of the foregoing factors "is not formalistic and the

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

1    Court must consider the particular factual setting presented."  *R-Delight,* 246 F.R.D. at 499;

2    *see also Owens-Illinois,* 186 F.3d at 441.

3        **A.      The Absent Parties Are "Necessary."**

4            Apps failed to properly effect service or otherwise join any owner of any copyright

5    in *Love Me Again*, or any defendant other than UMGI.  Her entitlement to do so expired long

6    ago.  Each of the copyright owners qualifies as a "necessary" party under Fed. R. Civ. P.

7    19(a)(2).  By definition, they "claim an interest" relating to the subject of the action.  As the

8    parties best situated to defend the originality of their song, and the validity of their

9    copyrights in that song, their absence from this action does, in the language of Rule 19(a),

10   "as a practical matter impair or impede [their] ability to protect [their] interest" in the

11   copyright to *Love Me Again*.  Fed. R. Civ. P. 19(a)(1)(B)(i).

12          Allowing Apps to proceed only against UMGI (an entity that indisputably has no

13   ownership interest in *Love Me Again*) also undoubtedly creates a "substantial risk" of

14   "double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(1)(B)(ii).

15   For instance, in the unlikely event this Court were to determine that *Love Me Again*

16   infringed the copyright in *Need to Know*, and purported to assess some sort of "damages"

17   against UMGI, the owners and authors of *Love Me Again* would not be bound by the

18   judgment, and could show in a separate proceeding (such as one brought by Apps in some

19   other jurisdiction) that *Love Me Again* did ***not*** infringe *Need to Know* – absurdly leaving

20   UMGI, a party without any right to compel the testimony of the creators, the only party

21   liable (and for ***someone else's*** infringement).  "This potential for factual and legal 'whip-

22   saw' weighs heavily in favor of having one court adjudicate the entire case with all of the

23   affected parties before it."  *R-Delight,* 246 F.R.D. at 504, *quoting Owens-Illinois*, 186 F.3d

24   at 441 (internal quotations omitted); *see also Lipton,* 781 F. Supp. at 1035 (adjudication in

25   copyright owner's absence created strong likelihood of inconsistent judgments); Fed. R.

26   Civ. P. 19, Advisory Committee's Note (Rule 19 furthers the interests "of the public in

27   avoiding repeated lawsuits on the same essential subject matter").

28

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 14353308v1

- 18 -          Universal Music Group, Inc.'s Motion for
                Summary Judgment

### B.   The Absent Parties Are "Indispensable."

Necessary parties have not been (and at this stage cannot be) joined.  These parties are indispensable.  "It is familiar law that the copyright owner is an indispensable party to a suit where the validity of his copyright is in issue."  *First Financial Mktg. Serv. Group, Inc. v. Field Promotions, Inc.,* 286 F. Supp. 295, 298 (S.D.N.Y. 1968); *accord, PocketMedicine.com, Inc. v. John Wiley & Sons, Inc.,* No. 04 Civ. 8369 (LMM), 2006 WL 785283, *4 (S.D.N.Y. Mar. 23, 2006); *Lipton v. Nature Co.,* 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992); *see also American Elec. Power Serv. Corp. v. EC&C Techs., Inc.,* No. C-2-01-1021, 2002 WL 31409846, *3, *9 (S.D. Ohio July 26, 2002) (granting motion to dismiss where patent holder was an indispensable party to patent infringement action and personal jurisdiction could not be obtained over it); *Cooper v. Digital Processing Sys.,* 182 F.R.D. 242 (N.D. Ohio 1998), *aff'd,* 215 F.3d 1342 (Fed. Cir. 1999).

All of the Rule 19(b) factors weigh heavily in favor of dismissal.  The absent owners and authors would be greatly prejudiced by any judgment rendered in this action because it would directly impact their valuable property rights in the copyrights in *Love Me Again*.  Fed. R. Civ. P. 19(b)(1).  Under the second factor, the Court could not reasonably overcome this prejudice through provisions in the judgment or the shaping of any relief granted.  Fed. R. Civ. P. 19(b)(2).  There is also no way to satisfy the third factor, since a judgment cannot be rendered without considering these absent parties' ownership interests.  Fed. R. Civ. P. 19(b)(3).  Finally, under the fourth factor, Apps would have an adequate remedy if this action were dismissed for non-joinder, as she could seek to commence a new action in an appropriate jurisdiction that includes all necessary and indispensable parties (subject, of course, to her ability to do so within the relevant statutes of limitations and proper service of process).  Fed. R. Civ. P. 19(b)(4).

The failure to name the owner of an allegedly infringing work is plainly grounds for dismissal of a copyright action under Rule 19(b).  In *First Financial,* a plaintiff sought a declaratory judgment that he was not infringing on the defendant's copyright.  The court

Universal Music Group, Inc.'s Motion for Summary Judgment

1   held that "it is familiar law that the copyright owner is an indispensable party to a suit where

2   the validity of his copyright is in issue." *Id*. at 298. "Consequently, since the validity of the

3   [ ] copyright could be affected adversely to the owner thereof, [the owner] is an

4   indispensable party." *Id*. *See also PocketMedicine.com*, 2006 WL 785283, at *4

5   (dismissing copyright action against publisher of book where "it is clear that … the

6   proprietor of copyright in the Book, should be joined" as an indispensable party).

7   **III.   EVEN IF UMGI WERE A PROPER DEFENDANT, APPS CANNOT SHOW**
       **THE NECESSARY PROOF OF "ACCESS" AND "SUBSTANTIAL**
8      **SIMILARITY."**

9   "In order to establish infringement, two elements must be proven: (1) ownership of a

10   valid copyright, and (2) copying of constituent elements of the work that are original." *Rice*

11   *v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir., 2003) (internal quotations omitted),

12   *quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Absent direct

13   evidence of copying" – which does not exist here – "proof of infringement involves fact-

14   based showings that the defendant had 'access' to the plaintiff's work and that the two

15   works are 'substantially similar.'" *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016)

16   (citations omitted); *see also Rice*, 330 F.3d at 1174. Here, as a matter of law, Apps cannot

17   satisfy either of these two requirements.

18   **A.   As a Matter of Law, Apps Has Insufficient Evidence of "Access."**

19   Apps "has the burden of presenting ***significant, affirmative and probative evidence***

20   to support a claim of access." *Tisi v. Patrick,* 97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000)

21   (emphasis added). More than a "bare possibility" that the defendant had access to the work

22   is required. *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982). "Access may not be

23   inferred through mere speculation or conjecture." *Walker v. Viacom Int'l, Inc.,* No. C 06-

24   4931 SI, 2008 WL 2050964, *6 (N.D. Cal. May 13, 2008). A plaintiff's "speculations of

25   access unsupported by personal knowledge" are insufficient to survive summary judgment.

26

27

28

Universal Music Group, Inc.'s Motion for
Summary Judgment

1    *Loomis*, 836 F.3d at 998.[11]

2        Where, as here, there is no direct evidence of access, "circumstantial evidence can be

3    used to prove access either by (1) establishing a chain of events linking the plaintiff's work

4    and the defendant's access, or (2) showing that the plaintiff's work has been widely

5    disseminated."  *Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1143 (9th

6    Cir. 2009).  Apps cannot satisfy either showing.

7        As a threshold matter, Apps has ***no*** evidence that ***UMGI*** – the only served defendant

8    – had legally cognizable "access" to her composition *Need to Know*.  Nor would that even

9    matter, since UMGI did not create, release, sell, distribute, or otherwise exploit *Love Me*

10   *Again*.  Proving UMGI had "access" would not establish that the unserved defendants who

11   wrote *Love Me Again*, Newman and Booker, or the record label that apparently released it

12   (Universal Island Records, a division of Universal Music Operations Ltd.) had such access.

13   In any event, Apps has no evidence that any of these third parties (let alone UMGI) had

14   sufficient "access."  She relies solely on a few isolated and brief "celebrity encounters" with

15   two music industry figures – Jay-Z and Tony Swain – coupled with pure speculation,

16   fantasy, and black-helicopter conspiracy theory in a futile effort to somehow link these

17   interactions to anyone who created or exploited *Love Me Again*.  In short, she inadequately

18   seeks to prove access only "through a very complex and intricate web of inferences."  *Rice*,

19   330 F.3d at 1178.

20       Apps' "evidence" of access boils down to the following:  at times prior to 2013, the

21   year *Love Me Again* was released, she posted a video of *Need to Know* on YouTube and on

22   _____

23   [11] If a plaintiff cannot demonstrate access (plus substantial similarity), she must show that
     the defendant's work is "strikingly similar" to protected expression in plaintiff's work, a

24   showing that is impossible without expert testimony.  *Turner v. SAMSUNG*
     *Telecommunications Am., LLC*, No. CV1300629MWFVBKX, 2014 WL 11456606, *7

25   (C.D. Cal. Aug. 4, 2014) ("In a technical area such as music, expert testimony is generally
     needed to establish striking similarity.").  Even upon a showing of striking similarity, the

26   requirement that a plaintiff show access is not abandoned wholesale; an inference of copying
     must still be reasonable in light of all of evidence. *Stewart v. Wachowski*, 574 F. Supp. 2d

27   1074, 1099 (C.D. Cal. 2005).

28

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

1   her personal website; she gave a copy of her recording of *Need to Know* to Jay-Z when she

2   happened to run into him at a fitness center; and her husband sent a copy of her recording of

3   *Need to Know* to Swain, who said he liked it.  Apps provides no evidence of any connection

4   between Jay-Z or Swain, on the one hand, and Newman, Booker, or the U.K. label Universal

5   Island Records that released *Love Me Again* – let alone UMGI – on the other.

6        Apps' isolated interactions with Jay-Z and Swain do not "establish[] a chain of

7   events linking the plaintiff's work and the defendant's access." *Art Attacks*, 581 F.3d at

8   1143.  Even if Jay-Z or Swain were ever employed by UMGI (which they were not), under

9   Ninth Circuit law "a plaintiff 'cannot create a triable issue of access merely by showing

10  'bare corporate receipt' of her work by an individual who shares a common employer with

11  the alleged copier.'"  *Loomis*, 836 F.3d at 995 (citing cases; citations omitted).  "Rather, it

12  must be reasonably possible that the paths of the infringer and the infringed work crossed."

13  *Id*. at 995-96, *quoting Towler v. Sayles*, 76 F.3d 579, 582–83 (4th Cir. 1996) (requiring a

14  "close relationship" for the corporate receipt doctrine to apply); *see also Jones v. Blige*, 558

15  F.3d 485, 491-92 (6th Cir. 2009) (affirming summary judgment for defendant where

16  plaintiff submitted her work to a senior vice president at Universal but there was no

17  evidence that the senior vice president had any contact with anyone involved in creating the

18  allegedly infringing work).  There is no evidence that Jay-Z or Swain had any involvement

19  with the creators of *Love Me Again* or any input on its creation – only Apps' tin-foil-hatted

20  speculation.  *See Loomis*, 836 F.3d at 997 ("Nothing in the record shows the requisite nexus

21  between Hooper and the Domino songwriters except for Loomis's own speculation…. There

22  was no evidence presented beyond mere speculation from [plaintiff] himself to show that

23  [defendant] had any role or input on any of [the allegedly infringing] music or recordings.

24  Therefore, it is not 'reasonably possible that the paths of the infringer and the infringed work

25  crossed.'"), *quoting Towler*, 76 F.3d at 582.

26        Nor can Apps show that her work, *Need to Know*, was "widely disseminated." *Art*

27  *Attacks*, 581 F.3d at 1143.  "Where the copyrighted work has only been published to a

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

limited audience … access cannot be inferred absent evidence that the defendants had a reasonable opportunity to view the work." *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1085 (C.D. Cal. 2005).  The appearance of a song on a website, without more, is insufficient to prove access.  *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d 514, 521-22 (S.D.N.Y. 2005) (availability of a copyrighted work on website does not constitute access, unless alleged infringer has been shown to have visited the website); *Chafir v. Carey*, No. 06 Civ. 3016, 2007 WL 2702211, *3 (S.D.N.Y. Sept. 17, 2007) (mere fact that plaintiff's song was available on a publicly accessible website was insufficient to prove access, without evidence that defendants actually visited the website).  Apps' claim that she distributed perhaps a couple thousand copies (at most) of her self-published CD to various people in and out of the music industry is also insufficient to show widespread dissemination.  *Rice*, 330 F.3d at 1178 (video that sold 19,000 copies over thirteen years was not "widely disseminated"); *Repp v. Webber*, 947 F. Supp. 105, 115 (S.D.N.Y. 1996), *aff'd*, 132 F.3d 882 (2d Cir. 1997) (no access where under 17,000 copies of record were sold); *Art Attacks*, 581 F.3d at 1144-45 (where company only sold about 2,000 shirts a year, there was no widespread dissemination and no possibility of access); *Jewel Music Pub Co. v. Leo Feist, Inc.*, 62 F. Supp. 596, 598 (S.D.N.Y. 1945) (no access where over 10,000 copies of song had been sold or distributed and music had been broadcast on national performances).[12] Apps' limited distribution does not prove access, without evidence that the creators of *Love Me Again* were among the recipients.  *See Loomis*, 836 F.3d at 998 ("Although there was a bare possibility that [defendant creators] heard [plaintiff's song] on the radio, or that they

_____

[12] *See also Jason v. Fonda*, 526 F. Supp. at 776-77 (C.D. Cal. 1981) (that perhaps 1,000 to 1,500 copies of plaintiff's book were sold "creates no more than a 'bare possibility' that defendants may have had access to plaintiff's book") (citation omitted); *Hoch v. MasterCard Intern. Inc.*, 284 F. Supp. 2d 1217, 1220-21 (D. Minn. 2003) (no widespread dissemination where 500 copies of work were distributed, and work was shown repeatedly at Baseball Hall of Fame, on public television, and elsewhere); *McRae v. Smith*, 968 F. Supp. 559, 560, 565 (D. Colo. 1997) (no access where 200 to 500 copies of song were distributed, and song won an award, was included in a musical compilation tape, and was performed regionally).

Universal Music Group, Inc.'s Motion for Summary Judgment

PRINTED ON

RECYCLED PAPER
LA 14353308v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

1  read about [plaintiff] in a magazine … or that they picked up one of [plaintiff's] promotional

2  CDs … that is not enough to raise a triable issue of access."); *Chafir*, 2007 WL 2702211, at

3  *3 ("Plaintiff's minimal distribution of CDs containing her song to various persons in the

4  music industry cannot properly raise an inference of access" because "[d]istribution of a

5  copyrighted work does not prove access where there is no evidence that the alleged infringer

6  actually received the copyrighted material.").

7        **B.**    **As A Matter of Law, Apps Has Insufficient Evidence of "Substantial**

8               **Similarity."**

9        Proof of "substantial similarity" requires a plaintiff to satisfy both an "intrinsic"

10  (subjective) and an "extrinsic" (objective) test, but at summary judgment, courts apply only

11  the extrinsic test. *Funky Films, Inc. v. Time Warner Entm't Co., L.P.,* 462 F.3d 1072, 1077

12  (9th Cir. 2006). Under the extrinsic test, lack of substantial similarity "may often be decided

13  as a matter of law." *Id.* at 1076. Indeed, the Ninth Circuit has "frequently affirmed

14  summary judgment in favor of copyright defendants on the issue of substantial similarity."

15  *Id.* "When the issue is whether two works are substantially similar, summary judgment is

16  appropriate [for the defendant] if 'no reasonable juror could find substantial similarity of

17  ideas and expression[.]" *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045

18  (9th Cir. 1994) (citation omitted). A "plaintiff who cannot satisfy the extrinsic test

19  necessarily loses on summary judgment, because a jury may not find substantial similarity

20  without evidence on both the extrinsic and intrinsic tests." *Funky Films*, 462 F.3d at 1077,

21  *quoting Kouf*, 16 F.3d at 1045.

22        "The 'extrinsic test' is an objective comparison of specific expressive elements."

23  *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir. 2002). It "considers whether

24  two works share a similarity of ideas and expression based on external, objective criteria."

25  *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). "Analytic dissection of a work and

26  expert testimony are appropriate to the extrinsic test." *Id.* Here, Apps presents no expert

27

28

PRINTED ON

RECYCLED PAPER
LA 14353308v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

    Universal Music Group, Inc.'s Motion for
Summary Judgment

1   testimony,[13] leaving only the Court's analytic dissection of the elements of her work that are

2   legally protectible and the similarities, if any, of those elements to *Love Me Again*.

3   "Analytic dissection requires breaking the works compared down into their constituent

4   elements, and comparing those elements for proof of copying as measured by substantial

5   similarity…. In comparing these elements, the Court must filter out any parts of the

6   copyrighted work which are not protected."  *Sony Pictures Entertainment, Inc. v. Fireworks*

7   *Entertainment Group, Inc.,* 156 F. Supp. 2d 1148, 1157 (C.D. Cal. 2001).  "This objective

8   prong is evaluated by listing and evaluating specific points of similarity."  *Alchemy II, Inc. v.*

9   *Yes! Entertainment Corp.*, 844 F. Supp. 560, 567 (C.D. Cal. 1994).

10         Apps does not contend that *Love Me Again* reproduces any of the **actual sounds** of

11   her **recording** of *Need to Know*.  Rather, her claim is limited to alleged copying of her

12   **musical composition** *Need to Know*.  This is important, because:

13         ***Sound recordings and their underlying musical compositions***
       ***are separate works with their own distinct copyrights***.  See 17
14       U.S.C. § 102(a)(2), (7). "When a copyrighted song is recorded
       on a phonorecord, there are two separate copyrights: one in the
15       musical composition and the other in the sound recording."
       *T.B. Harms Co. v. Jem Records, Inc.*, 655 F.Supp. 1575, 1576
16       n. 1 (D.N.J.1987).  *See also BTE v. Bonnecaze*, 43 F.Supp.2d
       619, 627 (E.D.La.1999); *Jarvis v. A&M Records*, 827 F.Supp.
17       282, 292 (D.N.J.1993) ("Under the Copyright Act, there is a
       well-established distinction between sound recordings and
18       musical compositions.").  ***The rights of a copyright in a sound***
       ***recording do not extend to the song itself, and vice versa***.
19       *BTE*, 43 F.Supp.2d at 627; *T.B. Harms*, 655 F.Supp. at 1576 n.
       1.

20

21

22   [13] Such testimony is usually important, if not essential, to prove substantial similarity.  *See*,
     *e.g.*, *Selle v. Gibb*, 741 F.2d 896, 905 (7th Cir. 1984) ("to bolster the expert's conclusion that
23   independent creation was not possible, there should be some testimony or other evidence of
     the relative complexity or uniqueness of the two compositions.  Dr. Parsons' testimony did
24   not refer to this aspect of the compositions and, in a field such as that of popular music …
     such testimony would seem to be particularly necessary"); *Lil' Joe Wein Music, Inc. v.*
25   *Jackson*, No. 06-20079-CIV, 2008 WL 2688117, *2 (S.D. Fla. July 1, 2008) (awarding
     attorneys' fees to prevailing copyright infringement defendant where plaintiff hired a
26   musicologist, but "never asked the musicologist to opine on the question of the originality of
     the phrases" at issue).

27

28

PRINTED ON

RECYCLED PAPER
LA 14353308v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Universal Music Group, Inc.'s Motion for
Summary Judgment

1   *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002) (emphasis added), *aff'd*,

2   388 F.3d 1189 (9th Cir. 2004).

3        "Sound recordings are 'works that result from the fixation of a series of musical,

4   spoken or other sounds[.]'" *Newton*, 204 F. Supp. 2d at 1249, *quoting* 17 U.S.C. § 101.

5   "The sound recording is the aggregation of sounds captured in the recording … produced by

6   the performer's rendition of the musical work." *Id.* at 1249-50 (citations omitted).  By

7   contrast, "[a] musical composition captures an artist's music in written form" and "protects

8   the generic sound that would necessarily result from any performance of the piece." *Id.* at

9   1249 (citations omitted).  Thus, in considering Apps' musical composition infringement

10  claim, the Court "must remove from consideration all the elements unique to [her]

11  performance." *Newton*, 388 F.3d at 1193.  "[W]hat matters is not how the musicians

12  actually played the notes" – or, in Apps' case, how she sang the lyrics – "but, rather, a

13  generic rendition of the composition … That is, we must compare the written compositions

14  of the two pieces." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878 (2016) (affirming

15  summary judgment for defendants on musical composition infringement claims) (internal

16  citation omitted); *see also Fahmy v. Jay Z*, No. 207CV05715CASPJWX, 2015 WL

17  5680299, *13 (C.D. Cal. Sept. 24, 2015) ("the case law is legion that when a comparison is

18  made for purposes of ascertaining whether there has been infringement of a copyright in a

19  written composition, the factfinder may only compare those musical elements which are

20  actually protected, which in most cases will be the sheet music of the written composition.").

21       Here, the parties agree that exhibits 1-32 and 1-33 represent accurate transcriptions

22  in musical notation of the ***only*** parts of *Need to Know* and *Love Me Again* that Apps claims

23  are "substantially similar" – the choruses.  These transcriptions show ***no*** similarities (let

24  alone "substantial" ones) in the chords or musical notes of the choruses.  At her deposition,

25  Apps admitted as much.  Particularly in claims of music copyright infringement, a court

26  must be mindful of the limited number of notes and chords available to composers and that

27  common themes frequently appear in different compositions, especially in popular music:

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1

2

> Everyone … acquainted with actions for the invasion of musical copyrights, knows how often the same short musical sequences recur spontaneously, and what a feeble proof of plagiarism is their reappearance in a later composition. Upon that scanty basis it is as unfair to impute imitation to a second comer, as it would be to impute it to the author.

3

4

5 *Brodsky v. Universal Pictures Co.,* 149 F.2d 600, 601 (2d Cir. 1945).

6        Here, the only possible similarity between the two choruses is that both use the

7 phrase "I need to know now." However, "[i]t is axiomatic that copyright law denies

8 protection to 'fragmentary words and phrases' … on the grounds that these materials do not

9 exhibit the minimal level of creativity necessary to warrant copyright protection." *Stern v.*

10 *Does*, 978 F. Supp. 2d 1031, 1040 (C.D. Cal. 2011), *quoting CMM Cable Rep, Inc. v. Ocean*

11 *Coast Props., Inc.*, 97 F.3d 1504 (1st Cir. 1996); *see also* 37 C.F.R. § 202.1(a) (exempting

12 from copyright protection "[w]ords and short phrases such as names, titles, and slogans");

13 *Batiste v. Najm*, 28 F. Supp. 3d 595, 613 (E.D. La. 2014) ("common expressions and phrases

14 are not entitled to protection for they do not satisfy the originality requirement."); *see also*

15 *Johnson*, 409 F.3d at 24 (phrase "you're the one for me" in title and lyrics of song not

16 protectable; summary judgment for defendant); *Murray Hill Publ'ns, Inc. v. ABC*

17 *Commc'ns, Inc.*, 264 F.3d 622, 627, 633 (6th Cir. 2001) (phrase "Good morning, Detroit.

18 This is J.P. on JR in the A.M. Have a swell day" not entitled to copyright protection;

19 summary judgment for defendant), *abrogated on other grounds*, *Reed Elsevier, Inc. v.*

20 *Muchnick*, 559 U.S. 154 (2010); *Prunte v. Universal Music Group, Inc.,* 699 F. Supp. 2d 15,

21 26 (D.D.C. 2010) (short phrases like "shoot to kill" and "so high" could not support a

22 finding of actionable copyright infringement); *Jean v. Bug Music Inc.,* No. 00 CIV

23 4022(DC), 2002 WL 287786, *6 (S.D.N.Y. Feb. 27, 2002) ("a reasonable jury could only

24 conclude that the lyrical excerpt 'clap your hands' is not afforded copyright protection

25 because the excerpt is a common phrase."); *Chapman v. Universal Motown Records Group*,

26 No. 08 CIV. 3255 (LAP), 2010 WL 517480, *4 (S.D.N.Y. Feb. 4, 2010) (phrase "lean back"

27 not subject to copyright protection; summary judgment for defendant).

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

Here, Apps acknowledged at her deposition that the short, common phrase "I need to know now" is ubiquitous in popular music, including in songs pre-dating *Need to Know* by well-known recording artists such as Bruce Springsteen, Britney Spears, Stevie Nicks, and Weezer.  Apps plainly did not create the phrase.  Thus, she cannot claim copyright protection over it.  *Lil' Joe Wein Music, Inc. v. Jackson*, 2006 WL 5428227, *3-*5 (S.D. Fla. Oct. 27, 2006) (summary judgment for defendant where phrase in song, "Go ___, its your birthday," was a "common hip-hop chant" not original to the plaintiff) , *aff'd*, 245 Fed. Appx. 873 (11th Cir. 2007); *Peters v. West*, 692 F.3d 629, 635-36 (7th Cir. 2012) (ubiquity of common saying "what does not kill me, makes me stronger," "together with its repeated use in other songs," precluded infringement claim); *Acuff–Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998) (phrase in song "you've got to stand for something, or you'll fall for anything" too common to accord copyright protection); *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 925 (N.D. Ill. 2013) (phrase in song "may the strength of the Holy Spirit be with you" not copyrightable).

Apps' claim that she "sang [the phrase 'I need to know now'] *a certain way*" when she performed *Need to Know* is irrelevant to her infringement claim.  The way Apps sang the phrase in her recorded (or unrecorded) performances of *Need to Know* cannot be a basis for this infringement claim based only on her alleged *musical composition* Need to Know. In a musical composition copyright case, "we may consider only [defendant's alleged] appropriation of the song's *compositional* elements and must *remove from consideration* all the elements unique to [plaintiff's] *performance*."  *Newton*, 388 F.3d at 1193 (emphasis added).  In *Newton*, as here, the plaintiff only claimed infringement of his musical composition.  Yet, like Apps, he sought to avoid summary judgment on this claim by commingling the composition's musical score with his unique way of *performing* it, which he dubbed the "Newton technique."  The Ninth Circuit explained:

> A crucial problem with the testimony of Newton's experts is that they continually refer to the "sound" produced by the "Newton technique." A sound is protected by copyright law only when it is "fixed in a tangible medium." 17 U.S.C. §

PRINTED ON
RECYCLED PAPER
LA 14353308v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

102(a).  Here, the only time any sound was fixed in a tangible medium was when a particular performance was recorded.... ***Newton's [musical composition] copyright extends only to the elements that he fixed in a tangible medium – those that he wrote on the score.***  Thus, regardless of whether the average audience might recognize the "Newton technique" at work in the sampled sound recording, those performance elements are beyond consideration in Newton's claim for infringement of his copyright in the underlying composition.

*Id*. at 1194 (emphasis added).  Having "isolated the basis of Newton's infringement action – the 'Choir' composition, devoid of the unique performance elements found only in the sound recording" – the court affirmed summary judgment for the defendant.  *Id*. at 1194-95.  The same analysis compels the same result here.

Likewise, Apps' claim that *Need to Know* and *Love Me Again* both ***repeat*** fragmented variations of the unprotectable phrase "I need to know now" does not change this result.  "Repetition is ubiquitous in popular music."  *Hobbs v. John*, 722 F.3d 1089, 1095 (7th Cir. 2013).  Even "liberal use of repetition" of the same words and phrases in two songs is not enough to establish substantial similarity.  *Id*. (summary judgment for defendant even though both songs ***repeatedly*** used the phrases "to hold you" and "you'll never know").  Indeed, in popular music, "all songs are relatively short and tend to build on or repeat a basic theme[.]"  *Selle*, 741 F.2d at 905.  The repetition of parts of the phrase "I need to know now" is merely a small cosmetic similarity that is insufficient to create a triable issue of fact.  *Peters*, 692 F.3d at 636 (that two songs "rhyme similar words, draw from a commonplace maxim, and analogize feminine beauty to a specific successful model" are merely "small cosmetic similarities. This means that [plaintiff's] claim for copyright infringement fails as a matter of law.").

/ / /

/ / /

/ / /

JMBM | Jeffer Mangels
Butter & Mitchell LLP

Universal Music Group, Inc.'s Motion for Summary Judgment

**CONCLUSION**

For all of the foregoing reasons, UMGI requests that the Court grant summary judgment in favor of UMGI and against Apps, and dismiss this action in its entirety.

Dated:  February 24, 2017.

JEFFER   MANGELS   BUTLER   &
MITCHELL LLP

/s/ Jeffrey D. Goldman
JEFFREY D. GOLDMAN
JDG@JMBM.com
TALYA GOLDFINGER
TGT@JMBM.com
1900 Avenue of the Stars, 7 th Floor
Los Angeles, California 90067
*Attorneys pro hac vice*

DICKINSON WRIGHT PLLC
MICHAEL N. FEDER
Nevada Bar No. 7332
GABRIEL A. BLUMBERG
Nevada Bar No. 12332
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

Attorneys   for   Defendant   Universal
Music Group, Inc.

Universal Music Group, Inc.'s Motion for
Summary Judgment

PRINTED ON
RECYCLED PAPER
LA 14353308v1