UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Alisa Apps,<br>    Plaintiff<br>v.<br>Universal Music Group, Inc., et al.,<br>    Defendant | 2:16-cv-01132-JAD-NJK<br><br>**Order Granting Summary Judgment**<br><br>[ECF No. 26] |

    Las Vegas-based singer and songwriter Alisa Apps sues Universal Music Group, Inc. (UMGI), Island Records, and the songwriters John Newman and Steve Booker for copyright infringement, alleging that the song "Love Me Again"—sung by Newman—is a copy of her song "Need to Know." UMGI moves for summary judgment, arguing that Apps has not presented sufficient evidence for a reasonable jury to conclude that "Love Me Again" copied "Need to Know." I agree that Apps has not met her evidentiary burden, so I grant summary judgment in UMGI's favor.

## Background

    In February 2007, Apps copyrighted her song "Need to Know." She gave an audio recording of that song to Jay-Z and Tony Swain—two influential figures in the music industry—but did not form a contractual or otherwise professional relationship with either of them. Jay-Z and Tony Swain are both affiliated with subsidiaries of the large parent company Vivendi S.A., colloquially known as the Universal Music Group. At various times from 2007 to 2010, Apps performed "Need to Know" at events in Los Angeles and Las Vegas, posted it on her YouTube channel and personal website, promoted it in magazines and on talk shows, and handed out 2000 CDs that included it as one of the recorded songs. She also advertised herself and her YouTube channel on taxis in Los Angeles.

    Years later, the hit song "Love Me Again" released and Apps heard a similarity between the chorus in her song and the chorus in "Love Me Again." The phrase "I need to know now"

appears in both songs, so she sued UMGI, "Love Me Again"'s writers John Newman and Steve Booker, and "Love Me Again"'s producer Island Records for copyright infringement.

## Discussion

### A. Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[2] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[3]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[4] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; she "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[5]

### B. Improper defendant

Apps filed suit against multiple defendants, but she only served one of them: UMGI. UMGI argues that summary judgment is proper because it is a holding company that serves no

---

[1] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[2] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[3] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[5] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

other purpose than to consolidate financial statements for its parent company.[6] It is undisputed that UMGI has no operations and does not create, develop, perform, market, sell, distribute, or otherwise exploit music, and it specifically does not own and has never owned or exploited "Love Me Again."[7] UMGI is a subsidiary of Vivendi S.A. and an indirect parent company of several companies within the Universal Music Group.[8] The Universal Music Group is the colloquial name for the group of music companies around the world that are owned by Vivendi.[9] A "general principle of corporate law deeply 'ingrained in our economic and legal systems'" is "that a parent corporation . . . is not liable for the acts of its subsidiaries."[10]

It's clear that UMGI is not the appropriate defendant for Apps's claim. Apps requests leave to amend "[t]o the extent that Universal Music Group's highly complex corporate structure resulted in [her] somehow naming the 'wrong' corporation as the defendant[.]"[11] Even if I were to find that UMGI is the right target for Apps's claim, I would still grant summary judgment on her claims because they fail on their merits.

### C. Copyright infringement

Copyright protection extends only to work that is original.[12] "Original, as the term is used in copyright, means only that the work was independently created by the author, and that it

---

[6] ECF No. 35 at 11.

[7] ECF No. 35 at 8; *see also Jordan v. Star Trak Ent., Inc.*, 2010 WL 454374 (C.D. Cal. Feb. 8, 2010) (finding that the very same UMGI involved in this case "does not create, develop, perform, market, sell, distribute, or exploit recorded music or musical compositions.").

[8] ECF No. 26 at 12.

[9] *Id.*

[10] *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998).

[11] ECF No. 33 at 7.

[12] *See Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345 (1991).

possesses at least some minimal degree of creativity."[13] "The mere fact that a work is copyrighted does not mean that every element of the work may be protected . . . copyright protection may extend only to those components of a work that are original to the author."[14] "Words and short phrases such as names, titles, and slogans" are not copyrightable,[15] and "common expressions and phrases are not entitled to protection for they do not satisfy the originality requirement."[16]

To prove that defendants infringed on her copyright, Apps must present evidence that demonstrates: "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant."[17] Songs have two distinct components that can be copyrighted: sound recordings and the musical composition.[18] It is undisputed that Apps owns the copyrights to both the sound recording and the musical composition of "Need to Know," but she contends that only the musical composition of the chorus of "Need to Know" was copied.[19]

---

[13] *Id.*

[14] *Id.* at 348.

[15] 37 C.F.R. § 202.1(a).

[16] *Batiste v. Najm*, 28 F. Supp. 3d 595, 613 (E.D. La. 2014) (citing *Emanation Inc. v. Zomba Recording Inc.*, 72 Fed. Appx. 187, 190 (5th Cir. 2003) (finding that common Cajun phrases "'We Gon Pass a Good Time, Yeah, Cher' and 'You Gotta Suck Da Head of Dem Der Crawfish' do not satisfy the originality requirement"); *Johnson v. Gordon*, 409 F.3d 12, 23–24 (1st Cir. 2005) (lyric "You're the one for me" found to be "too trite to warrant copyright protection"); *Prunte v. Universa Music Group, Inc.*, 699 F. Supp. 2d 15, 26 (D.D.C. 2010) (use of short phrase "so high" and use of touching the sky as a metaphor for being high found to be too clichéd to support a finding of actionable copyright infringement); *Jean v. Bug Music Inc.*, 2002 WL 287786, at *6 (S.D.N.Y. 2002) ("[A] reasonable jury could only conclude that the lyrical excerpt 'clap your hands' is not afforded copyright protection because the excerpt is a common phrase.")).

[17] *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017); *see also Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991).

[18] 17 U.S.C. § 102(a)(2), (7) (2012).

[19] ECF No. 26-3 at 16 (33:10–23 of the transcript).

She admits that "Love Me Again" does not copy any of the sounds from "Need to Know."[20] Regardless, she satisfies the first element.

Without direct evidence of copying, Apps may prove the second element with "circumstantial evidence that (1) the defendant[s] had access to the copyrighted work prior to the creation of defendants' work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant[s'] work."[21] "Circumstantial evidence of access is generally shown through either evidence of a 'chain of events . . . between the plaintiff's work and defendant[s'] access to that work' or evidence that 'the plaintiff's work has been widely disseminated.'"[22] And if Apps does not have evidence that the defendants had access to her song, then "a 'striking similarity' between the works may allow an inference of copying."[23]

The Ninth Circuit applies a two-part test to determine whether works are substantially or strikingly similar.[24] The first part—the extrinsic test—"requires plaintiffs to show overlap of 'concrete elements based on objective criteria[.]'"[25] The second part—the intrinsic test—"is subjective and asks 'whether the ordinary, reasonable person would find the total concept and feel of the works' to be substantially similar."[26] Courts apply only the extrinsic test at the

---

[20] *Id.*

[21] *Unicolors, Inc.*, 853 F.3d at 984–85; *see also Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977), *superseded on other grounds by* 17 U.S.C. § 504(b).

[22] *Unicolors, Inc.*, 853 F.3d at 985; *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).

[23] *Unicolors, Inc.*, 853 F.3d at 985; *see also Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987).

[24] *Unicolors, Inc.*, 853 F.3d at 985.

[25] *Id.* (quoting *Three Boys Music Corp.*, 212 F.3d at 485).

[26] *Id.* (quoting *Pasillas*, 927 F.2d at 442).

summary-judgment stage as a "plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests."[27] Deciding whether two works are substantially similar is "usually an extremely close issue of fact," so "summary judgment has been disfavored in cases involving intellectual property"[28] unless "no reasonable juror could find substantial similarity of ideas and expression . . . ."[29]

### *1.  Original lyrics*

Even if an entire song is copyrighted, copyright protection only extends to those elements of the work that are original to the author;[30] it does not extend to common phrases.[31] Apps's claim fails right here. She contends that the phrase "I need to know now" in the chorus of her song "Need to Know" was copied by defendants and included in the chorus of their song "Love Me Again." This phrase is not Apps's original phrase, so she has no copyright protection for it.

Apps wrote and copyrighted "Need to Know" on February 16, 2007. In Apps's deposition, UMGI provided and played a list of other songs predating "Need to Know" that also include the phrase "I need to know now":[32]

- "Violet and Blue" by Stevie Nicks, released in 1984 on the "Against All Odds" soundtrack;
- "Doubts Even Here" by New Order, released in 1981 on the "Movement" album;
- "Can You Feel It" by Uncle Sam, released in 1997 on the "Uncle Sam" album;

---

[27] *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)).

[28] *Id.* (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984)).

[29] *Kouf*, 16 F.3d at 1045 (quoting *Shaw v. Lindheim*, 919 F.2d 1353, 1358–59 (9th Cir. 1990)) (internal quotations omitted).

[30] *See Feist Publications*, 499 U.S. at 345.

[31] *See supra* n.16.

[32] *See* ECF No. 26-4 at 30–39 (128–137 of the transcript).

- ". . . Baby One More Time" by Britney Spears, released in 1999 on the ". . . Baby One More Time" album;
- "L'ennui" by Jonny 5 + Yak, released in 2001 on the "Onomatopoeia" album;
- "Best Man" by New Edition, released in 2004 on the "One Love" album;
- "Jamie" by Weezer, released in 2004 (but written in 1993) on the deluxe edition of the "Weezer" album (colloquially known as "The Blue Album");
- "Naveed" by Our Lady Peace, released in 1994 on the "Naveed" album;
- "That's The Way It Is" by LFO, released in 2001 on the "Life is Good" album;
- "You're Pretty Good Looking For A Girl" by The White Stripes, released in 2000 on the "De Stijl" album;
- "Code of Silence" by Bruce Springsteen, released in 2003 on the "The Essential Bruce Springsteen" album.

The phrase "I need to know now" is present in all of those songs, whether it's in the chorus, bridge, or some other verse. It is plainly not an original phrase, so Apps cannot claim that it is protected by copyright.

### 2. Access

"To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work."[33] Apps has no direct evidence that UMGI (or any of the unserved defendants) copied her song, so she must prove through circumstantial evidence that they had access to it. She can do this by presenting evidence of a chain of events between her work and the defendants' access to it or by showing that it was widely disseminated.[34]

#### a. Chain of events

Apps offers two theories—both of which are highly attenuated—that link her song "Need

---

[33] *L.A. Printex Indus. v. Aeropostale, Inc.*, 676 F.3d 841, at 846 (9th Cir. 2013) (quoting *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009)).

[34] *Unicolors, Inc.*, 853 F.3d at 985; *see also Three Boys Music*, 212 F.3d at 482.

to Know" to the defendants: the Jay-Z story and the Tony Swain story. She includes only the Jay-Z story in her complaint, and she discusses the Tony Swain story in her deposition and opposition to this summary-judgment motion. Neither satisfies her burden.

I begin with the Jay-Z story. Jay-Z (as he is widely known, but born as Shawn Corey Carter) is a hip-hop artist, a music producer, and the founder, owner, and CEO of an entertainment company that is allegedly partnered with UMGI.[35] At some point several years prior to the release of "Love Me Again,"[36] Apps happened upon Jay-Z at a gym in Los Angeles where she gave him a CD with several songs on it, one of which was "Need to Know."[37] Jay-Z gave her his assistant's phone number,[38] and at some point after that, she got the e-mail address of another of Jay-Z's employees.[39] Apps contacted Jay-Z's employees several times, but Jay-Z never responded to her.[40] Then, at a pre-Grammy party the following year, Apps ran into Jay-Z again and handed him another sample of her music.[41] This sample did not have "Need to Know" on it.[42]

---

[35] ECF No. 1 at 4, ¶ 19.

[36] The record is unclear regarding the exact dates involved in the Jay-Z story. The complaint alleges that Apps met Jay-Z for the first time in November 2009, but Apps discusses in her deposition e-mails between her and two women named Jana Fleishman and Carline Balan—whom Apps remembers as Jay-Z's associates—throughout 2008, and then Apps sees Jay-Z again at a pre-Grammy party in 2010. This temporal ambiguity does not cloud my analysis, however, because the dateless facts are so attenuated from "Love Me Again" and its production that Apps cannot show the necessary chain of events linking "Need to Know" to the defendants.

[37] *Id.*; *see also* ECF No. 26-4 at 11 (100: 11–16 of the transcript).

[38] ECF No. 26-4 at 11 (100:5–8 of the transcript).

[39] *Id.* at 12–13 (101:16–102:22 of the transcript).

[40] *Id.* at 12–15 (101–104 of the transcript).

[41] *Id.* at 17–19 (107:12–109:3 of the transcript).

[42] *Id.* at 19 (109:4–6 of the transcript).

Apps alleges that these two brief encounters with Jay-Z somehow connect "Need to Know" to UMGI because Jay-Z's company, "Roc Nation," is partnered with UMGI who is also somehow affiliated with the unserved defendants, and the unserved defendants got hold of "Need to Know" through internal relationships within the webbed corporate structure.[43] These allegations are unsupported by any evidence, and Apps seems to abandon this story because she does not address it at all in her opposition to this motion.

The Tony Swain story is not alleged in Apps's complaint,[44] but she raises it in opposition to this motion. Apps claims that, at some point in early 2007, Tony Swain spoke to Apps or her husband on the phone and invited them to his home.[45] So in March, they traveled to London and met with Swain for a couple hours.[46] After that meeting, Apps e-mailed an audio recording of "Need to Know" to Swain, he responded that he liked it, but for one reason or another, she never got another opportunity to meet with him.[47]

Apps theorizes that Swain shared her song with unserved defendant Newman because Swain "works for Universal and because John Newman's with Universal Island and they're both in England and it's a small, tight-knit industry."[48] She gave the same reasoning for Swain's connection to unserved defendant Booker.[49] But she offers no evidence that Swain had any connection to Newman and Booker at all or that Swain passed the song on to anyone at UMGI or

---

[43] ECF No. 1 at 4, ¶¶ 21–22.

[44] Apps had forgotten that she met with Tony Swain, but she found an entry in her journal where she discussed meeting with him so she included the information in her responses to UMGI's interrogatories. ECF No. 26-3 at 42–43 (61:16–62:5 of the transcript).

[45] ECF No. 26-3 at 44 (63:3–8 of the transcript).

[46] ECF No. 26-5 at 4–5 (11:21–12:21 of the transcript); ECF No. 26-3 at 47 (68:19–21 of the transcript).

[47] ECF No. 26-4 at 2–4.

[48] ECF No. 26-3 at 45 (64:16–19 of the transcript).

[49] *Id.* at 65 (65:3–4 of the transcript).

one of the other corporate entities within the Universal Music Group.

Apps also hypothesizes that the defendants got her song through someone called David Massey.[50] Apps claims that when she met with Swain, he told her that he might introduce her to Massey.[51] Massey was CEO of one subsidiary within the Universal Music Group and later became the CEO of Island Records,[52] which produced Newman's "Love Me Again." Apps never met with Massey, so she speculates that Swain shared "Need to Know" with Massey because he said he would introduce them, and then Massey went on to share her music when he became CEO at Island Records, and then Island Records, Booker, and Newman used her song's chorus as a template for "Love Me Again." Apps simply cannot forge the Tony Swain link in the Swain-to-UMGI-to-Island-Records or Swain-to-Massey-to-Island-Records chains. And with no evidence to support her speculation, she cannot prove that the defendants ever had access to her song under a chain-of-events theory.

        b.    *Wide dissemination*

Apps also attempts to show that "Need to Know" was so widely disseminated that the defendants had access to it. She argues that it was "widely publicly available" because "she performed the song several times through 2008 and 2009 at various venues in California, including the Aura nightclub in Studio City, the Sutra Lounge in Costa Mesa, the Tentation Ultra Lounge in Newport Beach," and at a mansion in Bel Air.[53] She also performed "Need to Know" at the grand opening of the Rio Hotel's Sapphire Pool in Las Vegas in 2009.[54] In addition to her performances, she posted the song on YouTube, put it on her website "alisaapps.com," and included the song in her music catalog that she promoted when she appeared on MTV, an

---

[50] ECF No. 33 at 16.

[51] *Id.*

[52] *Id.*

[53] ECF No. 33 at 13.

[54] *Id.*

10

Australian morning show, and in articles by MTV, OC Live magazine, Billboard Magazine, and Glamour Magazine.[55] She also advertised her website and YouTube page on Los Angeles taxis for four years and gave away approximately 2000 CDs that had several of her songs, including "Need to Know."[56]

But Apps presents no evidence that her advertisements on MTV, in magazines, and on taxis actually drew people to her website and music catalog. She provides no evidence of how many people listened to her song across the various Internet websites, she did not perform her song on the radio or on television, and her CD distribution is too insignificant to qualify as wide dissemination under the law.[57] There is also no evidence that her live performances were so grand that the defendants or another member of the Universal Music Group were present and heard it. I thus cannot find that a reasonable jury could conclude that "Need to Know" was widely disseminated.

### 3. *Substantial similarity*

Nor can I conclude on this record that "Love Me Again" and "Need to Know" are substantially similar. At the summary-judgment stage, an extrinsic test is used to determine whether two works are substantially similar.[58] "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria."[59] It requires "analytical dissection of a work and expert testimony."[60] "'Analytical dissection' requires breaking the works 'down into their constituent elements, and comparing those elements

---

[55] *Id.* at 14.

[56] *Id.* at 15.

[57] *See, e.g.*, *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (video that sold 19,000 copies was not "widely disseminated").

[58] *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).

[59] *Id.*

[60] *Id.* (internal quotations omitted).

11

for proof of copying' . . . ."[61]  Finally, "[b]ecause the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work."[62]

I need not delve into an extensive dissection of the two songs because the black-letter law is clear.  As I discussed in Section C(1), the phrase "I need to know now" is ubiquitous in music, so it is not copyrightable, and, in any event, Apps did not provide expert testimony to compare the two works.  Accordingly, Apps has not sustained her burden to demonstrate a genuine issue of substantial similarity between protected elements of her song and "Love Me Again."  Because Apps has not sustained her burden to show genuine issues that preclude summary judgment on her claims, I grant UMGI's motion.

**D.     The claims against the remaining defendants are dismissed.**

I also dismiss the claims against the remaining defendants because Apps failed to timely serve them or ask for additional time to do so.  FRCP 4(m) requires service of the summons and complaint to be completed within 90 days of the complaint's filing, and "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[63]  Rule 4(c)(1) makes it clear that "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed under Rule 4(m)."[64]

On August 31, 2016, I notified Apps that there had been no proof of service filed for Island Records, John Newman, or Steve Booker.  She was advised that all claims against these unserved defendants would be dismissed without prejudice unless she filed proof of service by

---

[61] *Id.* (citing *Rice v. Fox Broad. Co.*, 148 F. Supp. 2d 1029, 1051 (C.D. Cal. 2001), *reversed on other grounds*, 330 F.3d 1170 (9th Cir. 2003).

[62] *Id.*

[63] Fed. R. Civ. Proc. 4(m).

[64] Fed. R. Civ. Proc. 4(c).

September 30, 2016. That deadline passed without Apps filing proof of service for Island, Newman, or Booker, so I dismiss all claims against them without prejudice.

## Conclusion

Accordingly, with good cause appearing and no just reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that UMGI's motion for summary judgment **[ECF No. 26] is GRANTED.**

IT IS FURTHER ORDERED that **all claims against defendants Island Records, John Newman, and Steve Booker are DISMISSED** without prejudice under FRCP 4(m). The **Clerk of Court is directed to enter judgment in UMGI's favor** and **CLOSE THIS CASE**.

DATED: September 25, 2017.

_____
Jennifer A. Dorsey
United States District Judge